Case number 141502 Catherine Town v. Genesee County et al. 15 minutes per side. Mr. Breskin for appellant. Good morning, your honors. I'm Lawrence Breskin. I represent Catherine Town, who was the plaintiff in the underlying case. I have asked to reserve two minutes for review. You may proceed. This is a disability retirement case. The underlying question, the central question, is whether the County Retirement Commission complied with its ordinance and complied with its rules when it denied disability retirement to Catherine Town. Central to the issue are two things. One, that Catherine Town met every requirement under the ordinance. The ordinance required three things, and she met each of them. She had worked for over ten years. She had applied for, and she had been determined to be totally and completely disabled by the Social Security Administration. And she had been certified as disabled, and she should be retired by the medical director chosen and appointed by the Retirement Commission. Now some of these doctors claim that she could still work, right? Not exactly, but close. They had claimed that she did not have physical conditions which prevented her. She didn't have what she said she had. Did they say she didn't have, what was this thing, aphasia? She did not have primary progressive aphasia, and she did not have a Hughes syndrome, both of which are physical conditions. The medical director who certified her disability certified that she was mentally disabled and under the plan. This is Hamoud, correct? Hamoud, correct. He's an internist, right? Internist and endocrinologist. There's no information in the record regarding what additional background and training and experience he has had as an internist or as a physician having worked. Help me here. We see a lot of these disability cases, but usually they're either under ERISA or they're under Social Security. And we know the sort of standards. Do you see this as a straight contract case? Is it an administrative law, substantial evidence case? And you might also say, you know, everything you've said so far sounds like this is a Michigan case. Why is it in federal court? Well, the answer to the first question is it's in federal court because this case was brought as a dual case, one against the county for refusing to return her to work. That's under supplemental jurisdiction, isn't it? Excuse me? Is it under supplemental jurisdiction? Yes. You started off with a civil rights or federal statute, and that's gone. But those all fell out. The whole case got removed when we realized that all of the evidence showed she was disabled. There was no way to continue pursuing the disability discrimination case. So we dropped that portion of the case, but the case continued as a disability retirement case. It's still substantial evidence in that criteria? Yes. This is a review of an administrative decision under Michigan law. There are two standards of review under Michigan law. One standard of review is the substantial evidence review of the factual findings made by the Retirement Commission. But the second is whether the decision is contrary to law. And the contrary to law decision under Michigan law is reviewed by the court de novo. A given set of facts applied to an ordinance is reviewed de novo by the courts. The underlying facts are reviewed for substantial evidence, but when there is a set of given facts, those facts are reviewed de novo by the court. And what the district court missed below and did not discuss at all in her decision was that our claim is that the Retirement Commission failed to apply its rules in the ordinance. That when reviewing the different conclusions between Schutte, the Ph.D. medical director who was relied upon by the commission, and reviewing the certification of town's disability by medical director Hamoud, who was chosen by the Retirement Commission to correct the problems which they had seen in Schutte's decision, they did not assure that the ordinance was applied and their rules were applied. And the key rule to this, the rule which needs to be reviewed, is the job-specific standard of disability. The Retirement Commission has adopted a rule which says incapacity for duty in the employee of his or her last employer shall mean employment in the same or similar position the member held at the time of the disability. That is the rule which must be followed. And the underlying facts which were found by all of the doctors regarding town's disability were the same. Both the doctor who certified town's disability and the medical director who did not certify her disability made the same finding that she was not able to perform her own job, but that she would be able to perform... Well, you say she was... your brief at 15, which has that heading, then has the quote, well, it may have a significant impact on her ability and it may be difficult to return to her previous employment. Well, you know, there are a lot of things in life that are difficult that are not impossible. And on the factual side, you've got doctors with neurological credentials who say she doesn't have these neurological and neuropsychiatric conditions. And you've got an internist who says that she does. Isn't the Commission justified in making a choice between those views? Now, the internist agreed that she didn't have a physical condition, but found that the reports from her doctors, the depression, the mental issues were what made her disabled. His credentials aren't even as good as the other folks in terms of dealing with mental conditions. We don't know that. We know what his degrees were, but they had never asked him what his additional background in training was. Something they had done... I don't know if you were the lawyer at the time, but if you wanted to fight on that basis, you could have put in whatever additional credentials he had. We didn't choose him. We didn't know when we went to the hearing how they were going to vote. We assumed that by... He really wasn't picked to decide the issue that you're saying he decided, right? Well, we understood he had been, because the motions which were made brought forward that she had not had a purely mental examination. And at the hearing, or at the Commission meeting where a vote was taken to hire a doctor removed, there was discussion representing that all of her conditions, including the mental condition, would be reviewed, that this would not simply be a repeat of what medical directors should he had already reviewed. And it was only when his report came back, and we again objected that his report... Well, at that point, we assumed that it was going to be approved because we had a medical director's report. The medical director came in saying she was disabled. And so, at that point, we went to the meeting expecting it to be approved, walked out learning it had not approved, and that was the end of the process. This was a rehearing at this point, and there was no way to further pursue this other than by coming to court. It's important to understand also that there was an additional problem with Schuette's appointment as medical director. He is not a physician, and the ordinance specifically protects the members by assuring them that the review of their medical condition would be done by a physician. Well, this organization used physicians, right? Which organization? Well, I thought you were saying that they were looking for a medical director, and isn't this some sort of a group of doctors that provides medical tests for the commission? This is a company which makes referrals of doctors. So that's the medical director, that's what they used. No, the consulting physicians, the only person we're aware of at consulting physicians is Clarence Dixon. He manages it. He suggests what doctors should review somebody's condition, and he has no medical training at all. He has no, as far as we know, he has no, he's not an M.D., he has no certification as a nurse or anything else. But he uses doctors, it's somebody who refers them to a doctor, right? He has a list of doctors. You didn't object to that procedure, did you? Using him? We objected to the fact when we found out that Schuette was a Ph.D., we objected that he was not qualified to render an opinion. And when the commission voted to have Hamoud conduct an additional examination, one of the provisos was that physicians' consultants, Clarence Dixon, would be directed to make sure that the examination was conducted by an M.D. You'd already had Boyke and Trock, had you not? I mean, you didn't like those either, but they're definitely M.D.s. And Schuette is a neuropsychologist. He's not an M.D., but he is qualified in various mental conditions. Correct, but the problem with Trock and with Boyke is they looked at the physical condition of aphasia, and both of them certified to the commission that they were unqualified to review her mental condition. And since mental condition became the basis on which she was claiming disability, their opinions did not cover the mental condition. Their determination that she did not have aphasia is like a determination that she does not have lots of other things. She isn't wheelchair-bound. That doesn't mean that she can't. If she had that claim, though, didn't she say that's what she had and that's why she was disabled, or did that come out of the blue? On her form, she was asked what her disability was. There is no requirement under the plan, under the ordinance, to have a physical diagnosis as to the cause of the disability. It's only important to determine whether the condition is disabling or not disabling. To have her limited by an unprofessional opinion on her part as to what she is. When you say unprofessional, help me if I'm wrong here. You have the Retirement Commission's medical director that decides where things go. They referred it to Dr. Schutte for a neuropsychological examination to assess cognitive and emotional functioning in relation to a long-term disability claim. The fact that he's not an M.D., if he is a Ph.D. neuropsychologist, doesn't mean that he's unqualified to render that opinion, is he? It is under the ordinance. Because the ordinance says it will be a physician. And under Michigan law, they aren't given the option to interpret that. They have admitted that Schutte is not a physician. And the ordinance is clear. Thank you, Counsel. We'll have your time for rebuttal. Once it turned out Schutte wasn't a physician, is that the end of the case? Absolutely not. The ordinance, Your Honors, for the record, Your Honor, Michael Van Overbeck appearing on behalf of the Genesee County Employees Retirement Commission. May it please the Court. With regards to Dr. Schutte's examination, understand that Dr. Schutte was requested to do an examination on appeal of the original denial of disability. So there's some procedural steps here that plaintiff seems to omit that I think are significant. And that is the application was for primary aphasia, progressive aphasia. And we selected a physician through our medical director. The ordinance is very clear, and this really applies directly to the Dr. Schutte issue, is the examinations are made by or under the direction of the board's medical director. And so the first two examinations are done by neurologists based upon plaintiff's application indicating her disability to be the primary progressive aphasia. That's Boyke and Trock, is that right? Excuse me? That's Dr. Boyke and Dr. Trock. Yes, Dr. Boyke and Dr. Trock. Dr. Boyke, she objects to the examination, indicates that he was aggressive, that he had all kinds of personnel problems during the examination. She comes to the board. Based upon that report, the board had the ability to deny the disability. The board really was seeking to make sure that the plaintiff felt she had her appearance or at least her request fully considered. In fact, she had a whole lot more hearings than most people do. Well, in hindsight, I think, sadly, if there's a lesson to be learned here, it's maybe you need to stop it early in the process because all we have now is an administrative record that went on and on and on. We have a determination and an appeal of that determination and a rehearing. And the original determination was the denial. They appealed it. The board considered the appeal. And in considering that appeal, the concern then was the neuropsychological condition, and that's why she went to see Dr. Schutte. And Dr. Schutte's opinion is very, very, I think, extensive. Dr. Hamoud was called in because on their request, the plaintiff's request for a rehearing, they claimed she had now Hugh's syndrome, a new diagnosis. Please reexamine her. Here's new medical records, and the medical records were continuously supplemented. Here's now Dr. Hamoud's. Here's now evidence of an endocrinology issue. And Hugh's syndrome, please have her reexamined now based on Hugh's syndrome. So the board said, all right, I'm rehearing. What are we to make of the fact that the maladies, pursuant to which she was seeking a disability, the diagnosis kept changing as this process went on? I'm not sure what to make of that. Well, I will tell you it was very difficult for the board to go through that process. I mean, while plaintiff indicates that you do not have to say what your disability is, it is plaintiff's responsibility to prove a disability. The board doesn't have to go searching for a disability. You have to let them know what you feel your claimed disability is. It's not their job to do a diagnosis, to do research. We sent her for these examinations, and they constantly changed. And perhaps at that point she should have submitted new applications. But in the end, she changed it a third time. And so at that point in time, they sent her specifically to Dr. Hammoud very clearly for the Hugh syndrome. He didn't find Hugh's syndrome. And he didn't find that or any other endocrine disorder, but did come back and say, well, you know, but I do feel she's got some generalized anxiety. She seems to be very intense, and I feel you should give her a disability based upon that. This was on the rehearing of the appeal of the original denial. And the board said, wait a minute. We've had her seen by a neuropsychologist for that. We sent this for an examination solely on the issue of the Hugh syndrome. That's his area of expertise, and we are not going to find a disability looking at the entire record and, quite frankly, at the point at which they were in that disability process. And they denied the disability. Plaintiff says that they did not follow the ordinance, that somehow they violated their own rules in the ordinance. The ordinance is very clear. In order for the board to grant a disability retirement, they must have a certification from the medical director by a physician, either the medical director or under the direction of the medical director, that indicates that the applicant is totally and permanently disabled from further performance of duty in her last employer. And that does not exist in the record. Now, one plaintiff argues that Dr. Hamoud, on the original denial and then the re-hearing of the denial of the appeal, gives us that certification. But when you look at the record as a whole, that isn't the certification of that. That was outside of the scope of what they had granted the re-hearing for. The re-hearing was specifically with regards to the Hugh syndrome, was outside the area of his expertise. They relied upon, with regards to her psychological condition, the report from Dr. Schutte, the neuropsychologist. And so we felt that that was the appropriate action. The court is correct. This is a very atypical matter to be in front of the federal court. I will tell you this is my first time in front of the Sixth Circuit. I handle a lot of disability retirements, and these are state law cases when they come to public employee plans. They are a substantive law test. The courts in Michigan have long held that you do not overturn a decision made by a board of trustees of a retirement system in granting the denying disability retirements absence, showing a fraud, abusive discretion, that the decision is clearly contrary to the plan provisions or that it's clearly contrary to the facts and the evidence as submitted on the record. In this instance, the record was clearly set forth. The board's decision was totally appropriate under the circumstances. They fulfilled their fiduciary duties. The district court understood that and denied the plaintiff's request on appeal. Can this claimant refile now, again, or has the time expired? She has qualified for her service retirement, so she is now drawing her vested service retirement since that period of time, and her time has expired for her to now apply for a different disability retirement. Okay. Thank you, counsel. We have two minutes for rebuttal. Yes. The Retirement Commission requested that Schuette review and reconsider his decision, and they asked him to reconsider his decision for a number of reasons, but the most specific was that it appeared to them that he had not applied the job-specific standard of disability. They had, in fact, found that his underlying statement of facts would support granting a disability, and they voted to have him review under the job-specific standard applied by the Retirement Commission. Schuette never did that. He was never able to do that because the plan administrator never sent the job-specific standard to Schuette to review so that he could reconsider his decision under that standard. Towne sent a letter, email, to the plan administrator when she realized his opinion was not being made in accordance with the job-specific standard, and she refused to do so. She failed to send it to him, and he never reevaluated his decision. With the underlying facts that she would have difficulty doing her own job, the same thing Habood found, and that she might be able to do some other job, a fact which was denied by the county, that the difference between Schuette's opinion and Habood's opinion on the certification was because they applied different standards, and Schuette was unable to apply the correct standard because it was never given to him. The employer, furthermore, supported that. When Towne was reviewed one month after applying for disability and Boydkey rejected it, she was asked to have an examination with the employer's doctor, and the employer's doctor refused to let her return to work. The employer here is the county? Is the county, and Herman Banks... The retirement commission is above, in a sense... Is separate. Counsel, I think we have your case, and your time has expired. So this case will be submitted. The remaining case will be submitted on the briefs, and the clerk may adjourn.